**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| THE FEDERAL SAVINGS BANK, | ) | |
| 4120 W. Diversey, Suite C501 | ) | |
| Chicago, Illinois 60639 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| LOWER, LLC, | ) | |
| 5950 Symphony Woods Road, Suite 312 | ) | |
| Columbia, Howard County, Maryland 21044 | ) | |
| | ) | **Plaintiff Demands Trial by Jury** |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Plaintiff, The Federal Savings Bank ("TFSB"), complains as follows against Defendant Lower, LLC ("Lower"):

### <u>Parties</u>

1.  TFSB is a federally-chartered savings bank with its main office in Chicago, Illinois. TFSB is, therefore, a citizen of the State of Illinois.

2.  Lower is a limited liability company organized and existing under the laws of the State of Maryland, with its principal place of business in Columbia, Howard County, Maryland. Lower's sole member is Lower Holding Company. Lower Holding Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Columbia, Maryland. Lower is, therefore, a citizen of the States of Delaware and Maryland.

### <u>Jurisdiction and Venue</u>

3.  The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

4918-0433-2440, v. 1

4.  This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District.

## Factual Background

6.  At all relevant times, TFSB has been engaged in, *inter alia*, the residential mortgage business throughout the United States.

7.  At all relevant times, Lower has been engaged in the residential mortgage business in direct competition with TFSB.

8.  From December 2, 2019 to July 1, 2025, Max Blum ("Blum") was employed by TFSB.  Blum resigned from TFSB on July 1, 2025.  Immediately prior to his resignation from TFSB, Blum was a senior vice president in charge of managing a TFSB loan production office consisting of 20 TFSB employees (including Blum) in Elkridge, Howard County, Maryland.

9.  Blum has a TFSB employment contract that provides, in pertinent part:

> From the date on which you execute this Term of Employment through the period ending 12 months after your employment with the Company terminates, regardless of the reason for such termination, you will not entice, cause, encourage, induce, aid, assist or facilitate any employee to terminate their employment with the Company and/or become employed with another residential mortgage lender.

(Blum/TFSB employment contract, attached hereto as **Exhibit A**, § 3(d).)

10.  While Blum was employed by TFSB, he also owed TFSB a duty of loyalty.

11.  At all relevant times, Lower knew that Blum was a TFSB senior vice president in

charge of TFSB's Elkridge, Maryland loan production office and that he had a TFSB employment contract that contained the non-solicitation provision quoted in Paragraph 9, above.

12. At all times during Blum's employment with TFSB, TFSB had both a contract right and a common law right to have Blum refrain from recruiting his TFSB subordinates to resign from TFSB and go to work instead for a competitor of TFSB.

13. Prior to July 1, 2025, while Blum was still employed as a TFSB senior vice president in charge of TFSB's Elkridge, Maryland loan production office, Lower used Blum's position as the head of TFSB's Elkridge loan production office to arrange for almost the entire staff of that office to resign en masse from TFSB and to become employed instead by Lower.  Among other things, Lower promised Blum a $100,000 signing bonus for moving from TFSB to Lower with as many of Blum's TFSB subordinates as he could convince to make the move along with him.

14. Prior to July 1, 2025, the operations of TFSB's Elkridge, Maryland loan production office were profitable to TFSB.

15. Lower intentionally and deliberately interfered with TFSB's profitable Elkridge, Maryland operation by enticing Blum, while still a TFSB senior vice president, to solicit each of the TFSB employees who reported to him to resign from TFSB and to instead become employed by Lower, and by authorizing Blum to offer employment at Lower to each of those persons.

16. Lower's acts were specifically intended to, and did, cause harm to TFSB's lawful business interests.  As a direct, proximate, and intended result of Lower's actions, on July 1, 2025, (a) Blum and 16 of the 19 TFSB employees who reported to Blum resigned from TFSB, and (b) Blum and 15 of those 16 other people became employed instead by Lower.

17. The TFSB employees who resigned from TFSB on July 1, 2025 and became employed instead by Lower are:

- 3 -

Max Blum
William Boyd
James Conley
Michael D'Angelo
Dominic Dennelo
Evan Dotson
Temitayo Fawehinmi
Kevin Guthard
Daniel Johnston
William Lyons
Corey Nadelbach
Cyril Njoya
Chase Polhemus
Alexander Quail
Douglas Solit
Wayne Spindler

18.    The TFSB employee who resigned from TFSB on July 1, 2025 as a direct, proximate, and intended result of Lower's acts but who did not become employed instead by Lower is John Schweer.

19.    Lower's acts were done with the unlawful purpose of using a current managerial employee of TFSB to compete, while still employed by TFSB and while under a contractual non-solicitation provision, to use his position with TFSB to compete, on behalf of Lower, with TFSB for the TFSB employees whom TFSB had entrusted that manager to manage on behalf of TFSB. Lower acted without justifiable cause and with malice.

20. But for Lower's acts, each of the 16 TFSB employees who had reported to Blum and who resigned from TFSB on July 1, 2025 would still be employed by TFSB, and would have continued to be employed by TFSB for many years to come.  Two of them, Michael D'Angelo and Evan Dotson, in fact did return to the employ of TFSB.

21. As a direct and proximate result of Lower's acts, TFSB has incurred, and will continue to incur, damages in the form of profits that TFSB would have earned but for Lower's acts.

- 4 -

## COUNT I
## TORTIOUS INTERFERENCE WITH BLUM EMPLOYMENT CONTRACT

22. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

23. TFSB and Blum entered into a valid employment contract containing a non-solicitation provision that expressly survived the contract's termination.

24. Lower knew of that non-solicitation provision.

25. Lower intentionally interfered with the non-solicitation provision in Blum's employment contract, by inducing Blum to violate that provision.

26. In inducing Blum to violate the non-solicitation provision, Lower acted with actual malice, evil motive, intent to injure, and ill will.

27. At Lower's inducement, Blum violated the non-solicitation provision in his employment contract with TFSB.

28. As a direct and proximate result of Lower's acts, TFSB has incurred, and will continue to incur, damages in the form of profits that TFSB would have earned but for Lower's interference with the non-solicitation provision in Blum's employment contract.

WHEREFORE, Plaintiff, The Federal Savings Bank, prays for judgment in its favor and against defendant Lower, LLC for compensatory damages in an amount in excess of $75,000.00, the precise amount of which shall be proved at trial, punitive damages in an amount to be proved at trial, pre-judgment interest, reasonable attorneys' fees, the costs of this action, and such other and further relief as the Court may deem just and proper.

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS WITH OTHER EMPLOYEES, THOSE EMPLOYEES' PROFESSIONAL NETWORKS, AND PROSPECTIVE CLIENTS

4918-0433-2440, v. 1

29. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

30. At all pertinent times, Lower knew of and appreciated the significant economic values of TFSB's existing and/or prospective economic relations with the TFSB employees under Blum's supervision, those employees' professional networks, and prospective clients to be originated by Blum and/or the TFSB employees under his supervision.

31. To interfere with TFSB's existing and prospective business relations with such persons and entities, Lower engaged in a common-law tort, by tortiously inducing Blum to breach the non-solicitation provisions of his employment contract with TFSB.  Lower's inducement was intentional and willful.

32. Lower's acts were specifically calculated by Lower to cause damage and loss to TFSB in its lawful business and to TFSB's economic rights, by wrongfully disrupting TFSB's existing and/or prospective economic relations with the TFSB employees under Blum's supervision, those employees' professional networks, and prospective clients to be originated by Blum and/or the TFSB employees under his supervision.

33. Lower's acts were done with the unlawful purpose of causing such damage and loss to TFSB without justifiable cause or right.

34. In intentionally interfering with TFSB's existing and prospective business relations, Lower acted with actual malice, evil motive, intent to injure, and ill will.

35. As a direct and proximate result of Lower's acts, TFSB has incurred, and will continue to incur, damages in the form of profits that TFSB would have earned but for Lower's interference with TFSB's existing and prospective business relations.

WHEREFORE, Plaintiff, The Federal Savings Bank, prays for judgment in its favor and

- 6 -

against defendant Lower, LLC for compensatory damages in an amount in excess of $75,000.00, the precise amount of which shall be proved at trial, punitive damages in an amount to be proved at trial, pre-judgment interest, reasonable attorneys' fees, the costs of this action, and such other and further relief as the Court may deem just and proper.

## COUNT III
## CIVIL CONSPIRACY

36.  Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

37.  Prior to July 1, 2025, while Blum was still employed by TFSB, Lower and Blum conspired together and agreed that Blum would solicit each of the TFSB employees who reported to him to resign from TFSB and to instead, along with Blum, become employed by Lower, and that Lower would, through Blum, offer employment to each of those persons who expressed interest in that proposition.

38.  In furtherance of that agreement and conspiracy (a) Blum solicited each of the TFSB employees who reported to him to resign from TFSB and to instead become employed by Lower and (b) Lower, through Blum, offered employment to each of those persons who expressed interest in that proposition.

39.  Lower and Blum conspired and agreed to, and did, intentionally and deliberately interfere with TFSB's profitable Elkridge, Maryland operation by having Blum, while still a TFSB senior vice president, solicit each of the TFSB employees who reported to him to resign from TFSB and to instead become employed by Lower, and by offering employment at Lower to each of those persons.

40.  The conspiracy between Lower and Blum was specifically intended to, and did, cause harm to TFSB's lawful business interests.  As a direct, proximate, and intended result of

4918-0433-2440, v. 1

that conspiracy, on July 1, 2025, (a) Blum and 16 of the 19 TFSB employees who reported to Blum resigned from TFSB, and (b) Blum and 15 of those 16 other people became employed instead by Lower.

41. The TFSB employees who resigned from TFSB on July 1, 2025 and became employed instead by Lower are:

Max Blum
William Boyd
James Conley
Michael D'Angelo
Dominic Dennelo
Evan Dotson
Temitayo Fawehinmi
Kevin Guthard
Daniel Johnston
William Lyons
Corey Nadelbach
Cyril Njoya
Chase Polhemus
Alexander Quail
Douglas Solit
Wayne Spindler

42. The TFSB employee who resigned from TFSB on July 1, 2025 as a direct, proximate, and intended result of Lower and Blum's conspiracy but who did not become employed instead by Lower is John Schweer.

43. Lower and Blum acted with the unlawful purpose of using a current managerial employee of TFSB to compete, while still employed by TFSB and while under a contractual non-solicitation provision, to use his position with TFSB to compete, on behalf of Lower, with TFSB for the TFSB employees whom TFSB had entrusted that manager to manage on behalf of TFSB. Lower and Blum acted without justifiable cause and with actual malice, evil motive, intent to injure, and ill will.

44. But for the conspiracy between Lower and Blum, the 16 TFSB employees who had

- 8 -

reported to Blum and who resigned from TFSB on July 1, 2025 would still be employed by TFSB, and would have continued to be employed by TFSB for many years to come.  Two of them, Michael D'Angelo and Evan Dotson, in fact did return to the employ of TFSB.

45.  Blum has not been named as a defendant in this case because his TFSB employment contract contains an arbitration provision, pursuant to which TFSB has initiated an arbitration proceeding against Blum.

46.  As a direct and proximate result of Lower and Blum's conspiracy, TFSB has incurred, and will continue to incur, damages in the form of profits that TFSB would have earned but for that conspiracy.

WHEREFORE, Plaintiff, The Federal Savings Bank, prays for judgment in its favor and against defendant Lower, LLC for compensatory damages in an amount in excess of $75,000.00, the precise amount of which shall be proved at trial, punitive damages in an amount to be proved at trial, pre-judgment interest, reasonable attorneys' fees, the costs of this action, and such other and further relief as the Court may deem just and proper.

## COUNT IV
## UNJUST ENRICHMENT

47.  Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

48.  The profits on the loans to be originated from July 1, 2025 forward by the people who resigned from TFSB due to the acts of Lower constitute a benefit that has been conferred by TFSB on Lower. Lower was and is aware of that benefit, and it would be unjust to allow Lower to retain that benefit without making payment therefor to TFSB.

49.  Lower acted with actual malice, evil motive, intent to injure, and ill will.

50.  As a direct and proximate result of Lower's unlawful conduct and unjust enrichment,

TFSB has suffered and will continue to suffer damages.

WHEREFORE, Plaintiff, The Federal Savings Bank, prays for entry of judgment in its favor and against Defendant Lower, LLC as follows:

(a) Subjecting to a constructive trust in favor of The Federal Savings Bank all profits earned by Lower on all loans originated for Lower by any person who was previously an employee of The Federal Savings Bank in the group that was managed for The Federal Savings Bank by Max Blum;

(b) Awarding compensatory damages in an amount in excess of $75,000.00, the precise amount of which shall be proved at trial;

(c) Awarding punitive damages in an amount to be proved at trial;

(d) Awarding pre-judgment interest, reasonable attorneys' fees, the costs of this action, and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 17, 2026

Respectfully submitted,

/s/ Geoffrey H. Genth
Geoffrey H. Genth (Federal Bar No. 08735)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
ggenth@kg-law.com

*Counsel for Plaintiff*

4918-0433-2440, v. 1

- 11 -

OF COUNSEL:
Daniel S. Hefter
HEFTER LAW, LTD, Ltd.
332 S. Michigan Avenue, Suite 900
Chicago, Illinois
Telephone: (312) 403-9292
*(motion for admission pro hac vice forthcoming)*

4918-0433-2440, v. 1