**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THE FEDERAL SAVINGS BANK, | * | |
| Plaintiff, | * | |
| v. | * | **CIVIL NO. JKB-26-1122** |
| LOWER, LLC, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM AND ORDER**

Plaintiff The Federal Savings Bank ("TFSB") filed suit against Lower, LLC ("Lower"). (ECF No. 1.) Lower has filed a Motion to Stay Pending Arbitration. (ECF No. 13.) The Court will stay the case.

### I.   Background

TFSB and Lower are both involved in the residential mortgage business, and are competitors. (ECF No. 1 ¶¶ 6–7.) Max Blum, a former TFSB senior vice president in charge of managing a TFSB loan production office, had an employment contract with a non-solicitation clause, which provided:

> From the date on which you execute this Term of Employment through the period ending 12 months after your employment with the Company terminates, regardless of the reason for such termination, you will not entice, cause, encourage, induce, aid, assist or facilitate any employee to terminate their employment with the Company and/or become employed with another residential mortgage lender.

(*Id.* ¶¶ 8–9.) TFSB alleges that "Lower used Blum's position as the head of TFSB's Elkridge loan production office to arrange for almost the entire staff of that office to resign en masse from TFSB and to become employed instead by Lower." (*Id.* ¶ 13.) TFSB alleges that "[a]s a direct, proximate, and intended result of Lower's actions, on July 1, 2025, (a) Blum and 16 of the 19

1

TFSB employees who reported to Blum resigned from TFSB, and (b) Blum and 15 of those 16 other people became employed instead by Lower." (*Id.* ¶ 16.) On the basis of these allegations, TFSB brings claims for tortious interference with contract, tortious interference with business relations, civil conspiracy, and unjust enrichment against Lower. (*Id.* ¶¶ 22–50.)

Lower has filed a Motion to Stay Pending Arbitration. (ECF No. 13.) TFSB opposes. (ECF No. 14.) Lower explains that Blum's employment agreement contains an arbitration clause, and TFSB has thus instituted arbitration proceedings against him. (ECF No. 13-1 at 1.) The claims against Blum in the arbitration proceeding are for breach of contract, breach of duty of loyalty, intentional interference with prospective economic advantage, and conspiracy to commit intentional interference with prospective economic advantage. (*Id.* at 3.) As Lower explains, "[t]hough Lower is not a party to the existing arbitration proceeding, and Blum is not a party to this case, the facts alleged in both TFSB's Complaint and TFSB's Demand for Arbitration make clear that all allegations rise and fall with the disposition of one basic issue: whether Blum violated the non-solicitation provision in his employment contract with TFSB." (*Id.* at 2.)

## II. Analysis

Lower argues that a stay is mandatory pursuant to the Federal Arbitration Act ("FAA") and that, even if it is not mandatory, the Court has discretion to order a stay. The Court concludes that a discretionary stay is appropriate here.

Lower first attempts to argue that this case is subject to a mandatory stay pursuant to the FAA. (ECF No. 13-1 at 5–9.) It is not.[1] Section 3 of the FAA requires district courts to stay litigation if the parties to the litigation had previously agreed to arbitrate the dispute. But Lower and TFSB have not entered into an arbitration agreement with each other. Thus, the FAA provides

---

[1] Lower concedes in its Reply that "its argument regarding a mandatory stay is novel." (ECF No. 18.)

no authority to stay this case. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act . . . mandates that district courts shall direct the parties to proceed to arbitration on issues *as to which an arbitration agreement has been signed.*" (emphasis added).)

Lower next argues that, even if a mandatory stay is not permitted, the Court should exercise its discretion and order a stay. The Supreme Court has recognized that "[i]n some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see also Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992), *as amended* (June 23, 1992) ("The decision whether to stay the litigation of the non-arbitrable issues is a matter largely within the district court's discretion to control its docket."). Courts apply three factors in weighing a motion to stay: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Elite Const. Team, Inc. v. Wal-Mart Stores, Inc.*, Civ. No. JKB-14-2358, 2015 WL 925927, at *3 (D. Md. Mar. 2, 2015). The Court also considers whether "questions of fact common to all actions pending in the present matter are likely to be settled." *Am. Home Assur. Co. v. Vecco Concrete Const. Co. of Va.*, 629 F.2d 961, 964 (4th Cir. 1980).

A stay is appropriate here. In so concluding, the Court takes into consideration the similarities between TFSB's arbitrable claims against Blum and its claims in this Court against Lower. The Court finds compelling Lower's argument that proceeding simultaneously with the arbitration proceedings could result in inconsistent results and confusion, given that the claims against Lower are highly dependent on whether Blum violated the non-solicitation clause. *Am.*

3

*Home Assur. Co.*, 629 F.2d at 964 ("While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action."); *see also C.B. Fleet Co. v. Aspen Ins. UK Ltd.*, 743 F. Supp. 2d 575, 590 (W.D. Va. 2010) ("Noting the arbitrable and non-arbitrable claims share a considerable number of common questions of fact, the Court, in its discretion and in the interests of avoiding confusion and possible inconsistent results, will stay the remaining claims until the arbitration has ended.").

The Court does not find particularly persuasive TFSB's argument that "[g]iven the normal scheduling of federal court cases, whether or not this Court stays this case, the arbitration hearing will occur, and the award will be issued, before this case reaches trial. So there is no judicial economy due to possible collateral estoppel to be gained by staying this case." First, if the Court were to deny the stay, the Court would not schedule this case around the arbitration. Second, there is a great deal of judicial economy to be gained prior to trial. The parties must still engage in discovery and dispositive motions briefing, and those activities may be informed by the results of the arbitration. And a decision in the arbitration context may inform the parties' positions with respect to potential settlement discussions. The Court is likewise not persuaded by TFSB's argument that "the only scenario in which there could be collateral estoppel effect of the Blum arbitration award would be if the arbitrator were to hold that Blum did not solicit the 15 TFSB loan officers who worked in the TFSB loan production office of which he was in charge. Such a holding is highly unlikely." (ECF No. 14 at 4.) The Court will not prejudge the arbitrator's decision.

The Court has considered TFSB's arguments that it will be prejudiced by a stay, including that "Lower has been engaged in a years-long campaign to steal groups of TFSB loan officers" and that "[i]f Lower is permitted to continue to postpone any possibility of accountability, it is

highly likely to continue its unlawful attacks against TFSB." (*Id.* at 2–3.) This allegation is speculative, and a stay in this case does not prevent TFSB from instituting proceedings against Lower should Lower continue to engage in the alleged misconduct. As weighed against the interests of judicial economy and hardship to Lower, the Court concludes that this allegation is not sufficient to avoid a stay.

TFSB seeks a bond in the event that the Court grants the stay. (*Id.* at 5.) TFSB has cited *American Home Assurance Co.* for the proposition that "[t]o assure that the stay of all proceedings requested by Vecco will not prejudice American Home, Vecco shall be required to give bond in an amount sufficient to save American Home harmless pending the stay." 629 F.2d at 964. However, TFSB has not explained what factors the Court should consider in determining whether to require a bond, nor a bond amount. Accordingly, that request is denied.

## III.    Conclusion

Accordingly, it is ORDERED that:

1.  Lower's Motion to Stay (ECF No. 13) is GRANTED; and

2.  The parties SHALL FILE a joint status report within 60 days of this order and every 60 days thereafter until the Court lifts the stay. The parties SHALL FILE a status report within 10 days of the conclusion of the arbitration proceedings.

DATED this ___/___ day of July, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

5